IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs June 5, 2019

**TRAVIS CAPSHAW v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
No. 13-01288        Chris Craft, Judge

————————————————————

**No. W2018-01371-CCA-R3-PC**

————————————————————

Petitioner, Travis Capshaw, appeals the denial of his post-conviction petition. Petitioner argues that he was denied effective assistance of counsel when his trial counsel (1) failed to adequately utilize mental health issues as a mitigating factor in Petitioner's first degree murder charge and (2) such failure caused trial counsel to erroneously advise Petitioner to plead guilty. Following a review of the briefs of the parties and the record, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which ALAN E. GLENN and TIMOTHY L. EASTER, JJ., joined.

Eric J. Montierth, Memphis, Tennessee, for the appellant, Travis Capshaw.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Counsel; Amy P. Weirich, District Attorney General; and Abby Wallace and Karen Cook, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

*Background Leading to Conviction*

Petitioner was arrested on August 31, 2012, for the death of his wife, Ranita Burke. Because he was indigent, Petitioner was appointed trial counsel from the Shelby County Public Defender's Capital Defense Team. On October 9, 2012, the trial court issued an order for a mental evaluation, and Petitioner was found competent. On March 26, 2013, the Shelby County Grand Jury entered a true bill charging Petitioner with first degree premeditated murder, and the State filed a notice of intent to seek the death penalty.

On June 26, 2015, Petitioner pled guilty as charged, with a sentence of life imprisonment without possibility of parole. Four months following his plea, Petitioner filed an untimely motion to withdraw his guilty plea. The trial court denied his motion because the judgment had already become final on July 26, 2015.

*Guilty Plea Submission Hearing*

The facts of the case as presented by the State and stipulated by the defense at the guilty plea submission hearing are as follows:

[O]n August 20th of 2012, the victim Ranita Burke was at her place of employment at 6207 Summer Avenue. When she was attempting to get into her car, she was trying to either go to lunch or eat lunch in her car when witnesses observed a man walk quickly up to her car and [attempt] to get inside [her car] on her lunch break.

This witness observed the male push Ms. Burke back inside the car and began stabbing her repeatedly. Witness in the matter came out of the business after being alerted to [the stabbing] and actually saw [Petitioner], and attempt[ed] to intervene when she saw that he was indeed stabbing Ms. Burke with what she thought was a filet knife and she screamed for him to stop. And before leaving, the individual pulled Ms. Burke out of the car and slashed her throat with the knife and then ran from the scene.

That witness positively identified [Petitioner] from a photo spread. [Petitioner] and Ms. Burke were married and these individuals had seen [Petitioner] coming back and forth from her place of business during the course of her employment there and their relationship.

The basis for the death penalty is, Your Honor, that we were seeking under heinous, atrocious and cruel in that she died as a result of multiple stab wounds to the head and neck. These stab wounds or seven of them perforated her internal jugular vein, her right subclavian vein, and branches of her left external carotid artery. There were also two wounds to the chest which perforated her left lung. She had 16 wounds to the upper extremities and another 44 to the back and buttocks, perforations of the right fourth rib, right and left lungs.

At the hearing, Petitioner verified his signature on the plea acceptance document. The trial court explained to Petitioner his rights, the degrees of homicide, their corresponding

punishment, the elements of premeditated murder, and the sentencing procedure if he were convicted as charged. Petitioner confirmed under oath that he understood the plea, that his trial counsel and defense team had explained everything about his case to him, and that he was entering his plea voluntarily and knowingly. The trial court specifically addressed the preparation by Petitioner's trial counsel:

THE COURT: Okay. Is there anything else about this plea about what your attorneys explained to you, what they've been doing for you, anything about it you're confused about, anything you want me to explain for you?

PETITIONER: No, sir.

THE COURT: Okay. Now they've been coming in here and basically your attorneys have been worrying me to death. They were in here yesterday wanting more money for investigation for this and for experts and they've been doing a lot in your case. Is there anything about your case that you think they should have done that they haven't done or anything you're confused about that they haven't explained to you?

PETITIONER: No, sir.

THE COURT: Okay. So you feel like they've done everything they could do for you?

PETITIONER: Yes, sir.

THE COURT: Okay. And knowing all that they've explained to you, the good things and the bad things about going to trial and not going to trial, entering pleas and not.

PETITIONER: Yes, sir.

THE COURT: Do you have any other questions?

PETITIONER: No, sir.

THE COURT:     Knowing all of this, do you still wish to enter this plea of guilty and also to this sentence?

PETITIONER:    Yes, sir.

THE COURT:     Are you entering this plea freely and voluntarily without any threats or pressures or promises?

PETITIONER:    Yes, sir.

                              ….

THE COURT:     All right. [Petitioner,] would you stand, please, sir. Upon your plea of guilty to murder in the first degree, it's the judgment of the Court you're found guilty of that offense, sentenced to life without the possibility of release, plus the cost of the cause for which let mittimus and execution issue. Thank you, sir.

*Post-Conviction Hearing*

On January 5, 2016, Petitioner timely filed a post-conviction petition, and an amended petition was filed by his appointed counsel on February 2, 2018. At the evidentiary hearing on April 13, 2018, both Petitioner and his trial counsel were called as witnesses. Trial counsel testified that he was an Assistant District Public Defender in the Shelby County Public Defender's Office and worked on the capital defense team. Trial counsel had been working for the capital defense team for "close to ten years" when he was appointed to Petitioner's case. Trial counsel testified that he and the capital defense team worked on Petitioner's case from 2013 to 2016. Trial counsel explained that they "cast a wide net in terms of record collection" during representation and would look within that collection for anything that could be used in mitigation. Trial counsel testified that the team was trying to learn about Petitioner, "his family, his upbringing and the case" while at the same time looking into his social history. In Petitioner's case specifically, trial counsel testified that the defense team did not find much mitigation for the defense.

Furthermore, trial counsel addressed the team's investigation into Petitioner's mental health. Trial counsel explained that they had a forensic psychologist, Dr. James Walker, evaluate Petitioner. Trial counsel recalled that Dr. Walker's report identified Petitioner as having some psychiatric issues and substance abuse problems and that those

- 4 -

issues contributed to how he was making decisions at the time of the offense. The report was introduced as an exhibit at the evidentiary hearing. The report specifically addressed Petitioner's impaired ability to act in a rational manner:

> His genetic history and history of childhood abuse predisposed him to act in a violent fashion. His high levels of barbiturates and alprazolam at the time of the offense further eroded his ability to act in a rational and knowing fashion. These factors created a "perfect storm," causing [Petitioner] to cascade into an irrational, senseless state of violence and rage.

However, trial counsel testified that he did not feel that the report would have been strong enough to negate the mens rea element of the first-degree murder charge. Trial counsel explained that the fact that Petitioner waited for his wife outside of her work and the manner in which he killed her would be much stronger proof to a jury than the report of Petitioner's mental health. Trial counsel added further that the eyewitness to the murder would have testified to the victim's death, and he believed that testimony would have been more powerful to the jury than the testimony of an expert witness on the defense's behalf.

In addition, trial counsel testified that the team had genetic testing done on Petitioner for the "warrior gene" that indicates when a person is predisposed to be violent. However, trial counsel explained that using genetic testing to show a predisposition to violence was a "double-edge sword" to a jury. He explained that while a jury could find Petitioner was not at fault for his actions, a jury could also find that he should receive capital punishment because of a predisposition to violence. Therefore, in his opinion, the genetic testing was not compelling enough given the facts of Petitioner's case.

Moreover, trial counsel testified to the preparation of Petitioner's case and his suggestion that pleading guilty would prevent the Petitioner from facing the death penalty. Trial counsel testified that he and the capital team spent a lot of time with Petitioner and had agreed that Petitioner's case would likely result in a sentence of death if it went to sentencing. On cross-examination, trial counsel stated that his goal in the representation was to give Petitioner the best advice that he could and to aid Petitioner in making the best decisions. However, trial counsel acknowledged that the decision to go to trial was ultimately Petitioner's. In discussing plea options with Petitioner and other clients, trial counsel testified that the team offers their opinions about the strengths and weaknesses of each case, they discuss the housing situation in the Tennessee Department of Correction should the defendant get the death penalty, and they discuss the various options should the defendant receive anything less than the death penalty. In addition,

the team discusses the post-conviction process and time frame for such process. Trial counsel stated that a client is given time to think about the decision to accept a plea and encouraged to talk to family members about it.

Further, trial counsel testified to the discussion about the potential of going to trial with Petitioner, the possible outcomes, and the likelihood of facing the death penalty. Trial counsel denied any threatening or intimidating nature in those discussions and acknowledged that he and his team would have taken Petitioner's case to trial had Petitioner made that decision. Trial counsel stated that the discussions regarding plea deals were in the context of saving Petitioner's life from receiving the death penalty. Specifically, he testified that he had a "responsibility to counsel" his clients and inform them "realistically" what they were looking at with their case.

Petitioner also testified at the evidentiary hearing. Petitioner stated that he wanted to take his case to trial because he believed there were facts to show the crime was not intentional or premeditated. Petitioner stated that he tried to discuss this with his trial counsel, but he was advised that his options were to plead guilty or he would get the death penalty. Petitioner explained that it was "like [he] didn't have a choice." While Petitioner acknowledged that his trial counsel believed taking the plea was the best option to avoid the death penalty, he maintained that he had intended on going to trial the entire time.

Additionally, Petitioner testified that his trial counsel "manipulated" his family into pressuring Petitioner to plead guilty instead of going to trial. He explained that the defense team told his family that if he were to go to death row that they would not be able to visit him, and his family "begged [him] to plead [guilty]." Petitioner also testified that he had reasons not to trust his defense team. He explained that his trial counsel and the defense team were aware of the abusive history between Petitioner and his wife, and his trial counsel did not explain to him why it would not be useful towards his defense.

On cross-examination, Petitioner conceded that the State had strong evidence against him, including eyewitnesses and Petitioner's statement to police. Further, he agreed that his chances of a conviction were high had the case gone to trial. While Petitioner took issue with his trial counsel's decision not to use the psychologist's report regarding his mental health, he testified that he was aware that his trial counsel and defense team had been investigating his mental health issues and potential defenses from the beginning of the representation. Petitioner recalled that his defense team filed a motion to suppress his statement to police and acknowledged that police were ready to testify to his confession if the case were to be tried by a jury.

Petitioner also offered testimony regarding his guilty plea. Petitioner recalled that he signed the plea agreement, that he was advised of his rights, and that he confirmed that he was entering a plea voluntarily and knowingly, without any threats, pressures, or promises at the guilty plea submission hearing. However, Petitioner admitted that he lied under oath regarding his statement that he was pleading guilty knowingly and voluntarily. Following the evidentiary hearing, the post-conviction court denied Petitioner's request for relief on July 2, 2018, and Petitioner filed a timely notice of appeal to this Court on July 26, 2018.

ANALYSIS

Petitioner argues that his trial counsel's performance was ineffective for failing to adequately utilize Petitioner's mental health issues as a mitigating factor in his crime and such failure caused his trial counsel to erroneously advise Petitioner to plead guilty. We disagree.

To obtain post-conviction relief, a petitioner must prove that his or her conviction or sentence is void or voidable because of the abridgement of a right guaranteed by the United States Constitution or the Tennessee Constitution. T.C.A.§ 40-30-103; *Howell v. State*, 151 S.W.3d 450, 460 (Tenn. 2004). A post-conviction petitioner bears the burden of proving his or her allegations of fact by clear and convincing evidence. T.C.A § 40-30-110(f); *Dellinger v. State*, 279 S.W.3d 282, 293-94 (Tenn. 2009). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009) (quoting *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998). In an appeal of a court's decision resolving a petition for post-conviction relief, the court's findings of fact "will not be disturbed unless the evidence contained in the record preponderates against them." *Frazier v. State*, 303 S.W.3d 674, 679 (Tenn. 2010).

A petitioner has a right to "reasonably effective" assistance of counsel under both the Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). The right to effective assistance of counsel is inherent in these provisions. *Strickland v. Washington*, 466 U.S. 668, 685-86 (1984); *Dellinger*, 279 S.W.3d at 293. When a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. *Strickland*, 466 U.S. at 687; see *Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993). Failure to satisfy either prong results in the denial of relief. *Strickland* at 697.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness

under prevailing professional norms." *Good v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 688; *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). Furthermore, the reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, *see Strickland*, 466 U.S. at 690, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. *See Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). The prejudice prong of the test is satisfied by showing a reasonable probability, i.e. a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In the context of a guilty plea, the petitioner must show a reasonable probability that were it not for the deficiencies in counsel's representation, he or she would not have pled guilty but would instead have insisted on proceeding to trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *House v. State*, 44 S.W.3d 508, 516 (Tenn. 2001).

In addition, in determining the voluntariness of a guilty plea, a trial court must advise the defendant of the consequences of a guilty plea and determine whether the defendant understands those consequences to ensure the plea is a "voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970); *see also Boykin v. Alabama*, 395 U.S. 238, 244 (1969). The trial court must address the defendant personally in open court, inform the defendant of the consequences of the guilty plea, and determine whether the defendant understands those consequences. *See State v. Mackey*, 553 S.W.2d 337, 341 (Tenn. 1977), *superseded on other grounds by rule as state in State v. Wilson*, 31 S.W.3d 189, 193 (Tenn. 2000); Tenn. R. Crim. P 11(c). The trial court looks to the following factors in determining whether the defendant's guilty pleas were knowing and voluntary:

> the relative intelligence of the [petitioner]; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993).

We begin our analysis with the post-conviction court's findings. Following the evidentiary hearing, the post-conviction court found that Petitioner was not entitled to relief:

- 8 -

In [Petitioner's] case, this court can find no error or deficient performance of counsel at all that might have changed the outcome of his trial had, had he not entered a plea of guilty. His case had been thoroughly investigated and prepared, the defense was ready with what mitigation it had, and [Petitioner's] attorneys felt, as this court felt at the time of the plea, that there was a good chance that in one month the jury would have sentenced [Petitioner] to death by lethal injection if he had chosen to go forward with his trial. It was not only his attorneys' desire, but also their duty, to warn him of this possibility. They cannot be faulted for having done so after having done everything else they could for [Petitioner].

First, Petitioner argues that his trial counsel failed to use his mental health issues as a method to negate proof that he acted intentionally with premeditation and thus seek a lesser degree of murder at trial. Petitioner argues that the night before he murdered his wife, he had attempted suicide by overdosing on Xanax and that he was still under the influence of Xanax at the time of the offense. In addition, trial counsel hired a forensic psychologist to assess his mental health issues, and the report following that assessment determined that Petitioner's ability to premeditate was impaired. Therefore, Petitioner asserts that this report should have been used to negate the essential element of premeditation in his first degree murder case. Petitioner argues his trial counsel's decision not to pursue such evidence rendered his representation ineffective. The State contends that Petitioner has failed to meet his burden of proving deficient performance regarding his trial counsel's judgment in decisions regarding the use of Dr. Walker's report, the available strategies possible at trial, and the advice for Petitioner to plead guilty. Specifically, the State relies on the post-conviction court's holding that Petitioner's mental state was unlikely to undermine or negate premeditation or the intentional mens rea element. In addition, the State argues that Petitioner has failed to show that the use of his mental state at the time of the killing or Dr. Walker's report would have convinced a jury to convict him of something less than first degree murder or sentence him to anything less than death.

Petitioner has failed to prove by clear and convincing evidence his factual allegations. The record indicates that Petitioner's trial counsel and the four defense team members were well versed in Petitioner's case and the possible defenses if the decision to go to trial had been made. Trial counsel had investigated Petitioner's mental health thoroughly, both through a forensic psychologist and genetic testing, to explore possible mitigating factors that could be utilized in his defense. In addition, trial counsel filed a motion to suppress Petitioner's confession because his mental state was at issue at the time of the offense. The disposition of the suppression motion is not in the record on appeal. We surmise that it was either denied or not pursued in a hearing because of the plea agreement. Furthermore, trial counsel and Petitioner discussed the possibilities of

going to trial and plea agreements before Petitioner decided to plead guilty, and trial counsel indicated that he was willing to go to trial and defend Petitioner with all of his training and experience if Petitioner had made such decision. Trial counsel's strategy to advise Petitioner to plead guilty was only after trial counsel and the defense team had processed the information from their investigation regarding Petitioner's case and compared it to the evidence presented by the State against him. This Court does not second guess the tactical decisions and strategic choices made by trial counsel unless they are uninformed from inadequate preparation. *Hellard*, 629 S.W.2d at 9. In the case at hand, trial counsel made this decision after adequate preparation and thorough investigation.

Petitioner has failed to show how trial counsel's investigation and advice fell below an objective standard of reasonableness. Moreover, Petitioner has not shown that the use of his mental health issues would have convinced him to go to trial. The record reflects that information regarding Petitioner's mental health was available to him and discussed with him by his trial counsel, and nevertheless, Petitioner made the decision to plead guilty.

Petitioner argues that the testimony of Dr. Walker would have carried more weight with the jury than his trial counsel predicted. However, Dr. Walker was not presented to show the post-conviction court the impact his study would have made in terms of negating the intentional mens rea of first degree murder or be mitigation evidence in a sentencing hearing. Normally, "[w]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." *Taylor v. State*, 443 S.W.3d 80, 85 (Tenn. 2014) (*quoting Black v. State*, 794 S.W.2d 752 (Tenn. Crim. App. 1990)). Even though the psychologist's report was submitted into evidence at the hearing, Dr. Walker's conclusions were not subject to cross-examination by the State. The State did not object to admission of the report. In its findings of fact in the order denying relief, the post-conviction court noted that funds for travel and testimony expenses of Dr. Walker to appear at the trial had been granted *ex parte* by the trial court. However, Petitioner pled guilty about three weeks prior to his scheduled trial date of July 20, 2015. Credibility determinations could not be made by the post-conviction court based solely on Dr. Walker's report. However, the post-conviction court in its findings of fact stated that Dr. Walker's conclusions, even if he had testified at a trial consistent with the report, were a "stark contrast" to the credible facts establishing first degree murder. There is nothing in the record to justify disregarding these findings of the post-conviction court, which support its conclusion that trial counsel did not render deficient performance in his representation. Furthermore, Dr. Walker's report, without a stipulation by the parties that its conclusions are true, fails to show that Petitioner suffered prejudice even if trial counsel had rendered deficient performance.

In his second assertion, Petitioner argues that trial counsel's failure to utilize his mental health issues caused trial counsel to advise Petitioner to erroneously plead guilty. Moreover, Petitioner argues that he was pressured and coerced into pleading guilty instead of pursuing a trial. Petitioner asserts that he was adamant from the beginning of his case that he wanted to go to trial, but instead, he pled guilty after his defense team pressured him through his family to avoid going to trial. The State responds that this claim is without merit. We agree.

The post-conviction court concluded that Petitioner failed to prove by clear and convincing evidence that he was coerced or pressured into pleading guilty. At the evidentiary hearing, Petitioner failed to put on any proof of coercion or pressure by the defense team or his trial counsel to show that his guilty plea was involuntary. Petitioner asserted that trial counsel and his defense team told his family false statements regarding visiting death row and those statements helped them pressure Petitioner to plead guilty. However, other than his testimony, Petitioner failed to present any evidence or proof of these claims. Trial counsel admitted that he and the defense team generally encourage conversations with defendant's families but denied any coercion or force influenced Petitioner's decision. Furthermore, Petitioner testified at his guilty plea submission hearing that there was nothing else his trial counsel or defense team could have done or could have explained to him and stated that he entered his plea freely and voluntarily without any threats, pressures or promises. Even though Petitioner later retracted the testimony at the evidentiary hearing that his plea was voluntary, he failed to present any other evidence to support his assertion. Records indicate that Petitioner was given opportunities to object to the plea on multiple occasions both alone with his trial counsel and in front of the trial court, and Petitioner chose not to do so. The post-conviction court found that Petitioner was well-informed when he made his plea, and Petitioner had testified that he understood the terms and ramifications when questioned at the guilty plea submission hearing. The post-conviction court made factual findings that Petitioner had not presented credible evidence, thus finding that his testimony was not credible. Petitioner is not entitled to relief.

CONCLUSION

We affirm the judgment of the post-conviction court.

_____

THOMAS T. WOODALL, JUDGE

- 11 -